IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEVIN HENDERSON,

    Plaintiff,

v.

WARDEN GAIL WATTS, et al.,

    Defendants.

Civil Action No.: JKB-22-2630

## MEMORANDUM OPINION

Defendants Warden Gail Watts, Deputy Director Renard Brooks, and Sgt. G. Carter move to dismiss plaintiff Devin Henderson's Complaint or, alternatively, for summary judgment to be granted in their favor. ECF No. 8. Henderson was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in dismissal of the Complaint. ECF No. 9. To date, Henderson has not filed any response. No hearing is necessary to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, the Defendants' motion, construed as a motion to dismiss, will be granted.

**I.**     **Background**

    **A. Henderson's Complaint**

The Complaint raises three issues. First, Henderson alleges that from July 17, 2022, to the time the Complaint was filed on October 13, 2022, he did not receive any of the three nutritional meals he was supposed to receive daily while incarcerated at Baltimore County Detention Center ("BCDC") according to the Inmate Handbook. ECF No. 1 at 2–3. He asserts that the meals he did receive were always cold, rotten, or spoiled. *Id.* at 3. Second, Henderson states that the

showers are covered in black mold, infested with bugs, and the vents are clogged with dirt. *Id.* at 3. He alleges that the showers have not been inspected and cleaned daily as required. *Id.* Finally, Henderson alleges that his First Amendment rights are being violated because he is not allowed to physically attend Muslim Jumah services, to listen to sermons, or to pray in congregation. *Id.* He seeks monetary damages. *Id.* at 4.

Henderson brings his claims against Warden Gail Watts, Deputy Director Renard Brooks, and Sgt. G. Carter. He explains that "the Inmate Handbook is written by Director Gail Watts, Deputy Director Renard Brooks" and that "therefore they're [] liable." *Id.* at 3. He also explains that Sgt. G. Carter is also liable. *Id.*

### B. Defendants' Response

The Defendants filed a motion seeking dismissal of the complaint or, in the alternative, summary judgment in their favor. ECF No. 8-1. They contend that the Complaint should be dismissed because: (1) Henderson has not exhausted his administrative remedies; (2) the Complaint does not establish supervisory liability; (3) the Complaint fails to allege a serious or significant physical or emotional injury or that the Defendants were deliberately indifferent; and (4) the Defendants are entitled to qualified immunity. *Id.* at 1.

### II. Standard of Review

The Defendants' motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF No. 8-1. Motions styled in this manner implicate a court's discretion under Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). The Court finds it unnecessary to rely on matters outside the pleadings, and will review Henderson's claims under the Rule 12(b)(6) standard.

2

In reviewing the motion, the Court accepts the well-pleaded allegations as true and in the light most favorable to the Henderson. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

The Court is mindful, however, that Henderson is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

**III.    Discussion**

**A. Exhaustion of Administrative Remedies**

The Defendants raise the affirmative defense that Henderson has failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

3

other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by a defendant. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Ross v. Blake*, 578 U.S. 632, 639 (2016); *Bock*, 549 U.S. at 215–16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Consequently, if Henderson has not properly presented his claims through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639.

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

4

Here, the Defendants state that BCDC has an Inmate Complaint Process, which is laid out in the Inmate Handbook. ECF No. 8-1 at 4. Further, Henderson responded in the negative to the following question on a preprinted complaint form: "If you are a prisoner, did you file a grievance as required by the prison's administrative remedy procedures?" *Id.*; *see* ECF No. 1 at 2. Thus, it appears that Henderson did not exhaust his administrative remedies as required, and his case may require dismissal for this reason. However, the Court will also review the merits of Henderson's claims.

### B. Supervisory Liability

Defendant Watts argues that the Complaint fails to allege her specific involvement in any misconduct beyond writing the Inmate Handbook. ECF No. 8-1 at 4–5. Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with allegations that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal

link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

While the Complaint states that Watts wrote the Inmate Handbook, which contains the policies Henderson alleges have been violated, he does not claim that Watts personally participated in violation of those policies, thereby violating his constitutional rights. Henderson also fails to allege that Watts was aware of the alleged misconduct by her subordinates. As Henderson has not alleged Watts' personal participation nor her knowledge of the alleged violations, the claims against Watts must be dismissed.

### C. Conditions of Confinement

The Defendants also argue that the Complaint fails to allege sufficient facts to support a Fourteenth Amendment claim for unconstitutional conditions of confinement. *See* ECF No. 8-1 at 5–7. Defendants assert that Henderson has not alleged any serious injury or that the Defendants were deliberately indifferent. *Id.* at 6.

The Supreme Court has held that pretrial detainees "retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Protections for individuals confined by the state include the right to reasonable safety and adequate medical care. *See Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (holding that prison officials are constitutionally required to maintain "humane conditions of confinement," including "the provision of adequate medical care" and taking "reasonable measures to guarantee the safety of the inmates").

In *Hill v. Nicodemus*, the Fourth Circuit held that the Eighth Amendment deliberate indifference standard applies to Fourteenth Amendment claims by pretrial detainees of inadequate medical treatment. 979 F.2d 987, 991–92 (4th Cir. 1992) ("[P]rison officials violate detainee's

6

rights to due process when they are deliberately indifferent to serious medical needs." (quoting *Gordon v. Kidd*, 971 F.2d 1087 (4th Cir. 1992)). The same standard applies to conditions of confinement claims. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 259 (D. Md. 2020) ("Importantly '[w]hether one characterizes the treatment received by [the prisoner] as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard.'" (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Under that standard, plaintiffs must allege objective and subjective components—(1) that the alleged deprivation is "objectively, sufficiently serious" and (2) that the prison official acted with a "sufficiently culpable state of mind." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (citations and internal quotation marks omitted). To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Here, the Court does not address whether Henderson has alleged an objectively sufficiently serious deprivation, as he fails to allege that the Defendants knew anything about the allegedly unconstitutional conditions of confinement beyond having written the Inmate Handbook. Henderson's entire theory of liability relies on their having written the regulations which he contends were violated by the conditions at BCDC. Henderson's failure to plead the requisite deliberate indifference by the Defendants requires that these claims be dismissed.

7

### D. Free Exercise of Religion

Henderson also makes a First Amendment claim alleging he had been denied physical access to congregate prayer services. Despite Defendants failure to respond to these allegations, the Court is obligated to dismiss any claims inadequately stated because Henderson proceeds *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

To state a claim for violation of rights under the Free Exercise Clause, a plaintiff must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion. *See Wilcox v. Brosn*, 877 F. 3d 161, 168 (4th Cir. 2017) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). A substantial burden is placed upon a prisoner's religious exercise when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas*, 450 U.S. at 718. Nevertheless, prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89–91 (1987). As noted above, liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation.

Henderson again relies only on his assertion that the Inmate Handbook allows him to go to religious services, but does not claim any personal action by the Defendants. As such, Henderson fails to meet the federal pleading requirements.

### IV. Conclusion

For the foregoing reasons, the Defendants' motion, construed as a motion to dismiss, will be granted and the complaint will be dismissed.[1] A separate order follows.

---

[1] Because the Complaint will be dismissed for the foregoing reasons, the Court need not address Defendants' remaining argument that they are entitled to qualified immunity.

Dated this __19__ day of December, 2023.

                              FOR THE COURT:

                              _____
                              James K. Bredar
                              Chief Judge

9